## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CITIZENS INSURANCE COMPANY OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. |
| | ) |
| NICHOLAS MARIETTI, ROBERT PALLEY, JAKE GANTZ and 40 S. ASHLAND CONDOMINIUM ASSOCIATION | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Citizens Insurance Company of America ("Hanover"), by and through its attorneys, Walker Wilcox Matousek LLP, for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202 against Defendants Nicholas Marietti ("Marietti"), Robert Palley ("Palley") and Jake Gantz ("Gantz," and together with Marietti and Palley, the "Individual Defendants"), and 40 S. Ashland Condominium Association (the "Association"), states as follows.

1. Hanover is an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the Defendants under Policy No. OBC-D394506-01 (the "Policy," attached as Exhibit 1) for a lawsuit filed by the Association against the Individual Defendants and non-party, Ashland Harris, LLC ("Ashland Harris"), captioned *40 S. Ashland Condominium Association v. Ashland Harris, L.L.C, et al.*, No. 2019-L-005143, and pending in the Circuit Court of Cook County, Law Division (the "*40 S. Ashland* Action") (the operative complaint in the *40 S. Ashland* Action, along with its exhibits, is attached as Exhibit 2).

2. The *40 S. Ashland* Action was brought by the Association against Ashland Harris

and the Individual Defendants based upon alleged defects in the design and/or construction of the property, resulting in abnormal sound transference. (*See* Ex. 2.) The *40 S. Ashland* Action alleges three causes of action: 1) Breach of Express Warranty against Ashland Harris; 2) Breach of Tolling Agreement against Ashland Harris; and 3) Breach of Fiduciary Duty against the Individual Defendants.

## PARTIES

3. Hanover is organized and exists pursuant to the laws of Michigan, with its principal place of business in Massachusetts.

4. 40 S. Ashland Condominium Association is an Illinois not-for-profit corporation located in LaGrange, Illinois. The Association is named because it is an insured under the Policy and its rights and obligations under the Policy may therefore be determined or affected by the outcome of this litigation, and also because it is an interested party to these proceedings by virtue of being the plaintiff in the *40 S. Ashland* Action.

5. Upon information and belief, defendant Nicholas Marietti is a citizen of Illinois, and served as a director of the Association until on or about February 8, 2018. The Association alleges that Marietti is a former employee, member and/or agent of Ashland Harris, and that he administered the Association on behalf of Ashland Harris. (*See* Ex. 2, ¶ 59.) Upon further information and belief, Marietti is or was an owner and founder of VennPoint Real Estate LLC (formerly Trilogy Investments LLC, "Vennpoint") (an investor and participant in the 40 S. Ashland building development) and was a Manager of Ashland Harris at relevant times. Marietti and defendant Gantz are Managers of Marietti LLC, which is a Manager of Ashland Harris along with defendant Gantz and EJP Holdings LLC.

6. Upon information and belief, Robert Palley is a citizen of Illinois, and served as a

director of the Association until on or about February 8, 2018. The Association alleges that Palley is a former employee, member and/or agent of Ashland Harris, and that he administered the Association on behalf of Ashland Harris. (*See id.*) Upon further information and belief, Palley is the Manager of NotPil LLC (formerly Palley LLC), which is the Manager of EJP Holdings LLC, which in turn is a Manager of Ashland Harris along with defendant Gantz and Marietti LLC.

7. Upon information and belief, Jake Gantz is a citizen of Illinois, and served as a director of the Association until on or about February 8, 2018. The Association alleges that Gantz is a former employee, member and/or agent of Ashland Harris, and that he administered the Association on behalf of Ashland Harris. (*See id.*) Upon further information and belief, Gantz is and/or was during relevant times a Vice President of VennPoint, and is a Manager of Ashland Harris along with Marietti LLC (of which he is also a Manager) and EJP Holdings LLC.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1) because there is complete diversity between Hanover and the Defendants, and the amount in controversy, exclusive of interest, exceeds $75,000.

9. This Court has personal jurisdiction over the Defendants because they are residents of Illinois.

10. This Court has the power to issue a declaratory judgment regarding Hanover's rights and obligations pursuant to the Policy under 28 U.S.C. §§ 2201-2202.

11. This Court is a proper venue under 28 U.S.C. § 1391(b)(1) because the Association has its principal place of business in this judicial district, and the Individual Defendants reside in this judicial district.

12. As a result of the dispute between Hanover and the Individual Defendants regarding

the existence of coverage for the *40 S. Ashland* Action, there is an actual case or controversy between the parties.

## FACTUAL ALLEGATIONS

### *40 S. Ashland Action*

13. On May 13, 2019, the Association filed the *40 S. Ashland* Action in the Circuit Court of Cook County against Ashland Harris and the Individual Defendants, arising out of alleged defects in the design or construction of the property at 40 South Ashland Avenue, La Grange, Illinois (the "Property") (A copy of the original complaint is attached as Exhibit 3).

14. On August 29, 2019, the Association filed an amended complaint in the *40 S. Ashland* Action, which is now the operative pleading. (*See* Ex. 2.)

15. The Association alleges: that the Individual Defendants were employees, members and/or agents of Ashland Harris, which developed the Property; that prior to the election of the first Unit Owner Board, Ashland Harris administered the Association; and that Individual Defendants administered the Association on behalf of Ashland Harris from April 25, 2017 (its inception) to February 8, 2018, when it was turned over to individual unit owners. (*Id.* at ¶¶ 55-58, 61, and 84.) In Count III (Breach of Fiduciary Duty) of the original complaint, the Association referred to the Individual Defendants collectively as the "Developer Board". (See Ex. 3 at ¶¶ 54-62, 64 and 66.)

16. The claims asserted by the Association were purportedly assigned to it by the individual unit owners, including warranty claims regarding the construction of the Property. (Ex. 2 at ¶¶ 5-52.)

17. Ashland Harris was directly responsible for the initial sale of individual condominium units at the Property, which were marketed as luxury units, beginning on or around

4

May 2017, for occupancy beginning in the summer of 2017. (*Id.* at ¶¶ 63-64, 67-68.)

18. The Association alleges that the purchase agreements associated with the individual units included a "Certificate of Limited Warranty," under which Ashland Harris warranted that "'the Purchased Residential Unit and the Common Elements and Limited Common Elements…will be free from latent defects due to faulty materials or workmanship and from major construction defects…'." (*Id.* at ¶¶ 65-66; Ex. B.)

19. According to the Association, during the summer 2017, various owners discovered sound transference issues and, on or around December 21, 2017, Marietti and the Property's architect met with unit owners concerning the sound transference between units. (*Id.* at ¶¶ 68-70.)

20. The Association alleges that, on or around April 2, 2018, the architect discovered that the floor/ceiling assembly was not constructed as required by the architectural drawings, causing or contributing to the sound transference issues. (*Id.* at ¶ 71.)

21. Marietti retained an outside firm, the Talaske Group, Inc. ("Talaske"), which performed sound testing and, on July 12, 2018, issued a report concluding that the sound performance results for the Property's floor/ceiling system fell short of the standard for luxury residential buildings. (*Id.* at ¶¶ 70-73.)

22. According to the Association, Talaske proposed certain remediation for the sound transference; however, Marietti allegedly recommended an alternative solution at a July 23, 2018 meeting of the Board, and during the month of August 2018 tested the alternative solution (*Id.* at ¶¶ 74-76.)

23. The Association alleges that Marietti and the builder attended a September 10, 2018 meeting of the Board and there announced a plan to implement a solution to the sound transference issues, but that after the meeting Marietti suggested a different mechanism. (*Id.* at ¶¶ 77-78.)

24. According to the Association, Ashland Harris also failed and refused to complete punch list items, which Marietti promised to remediate. (*Id.* at ¶¶ 79-80.)

25. The Association alleges that, on or around November 8, 2018, in reliance on Marietti's promise that Ashland Harris would remediate the transference issue and address punch list items, the Association's Board entered into a tolling agreement with Ashland Harris, requiring Ashland Harris to remediate all alleged warranty claims, including the sound transference issues, at its own cost and expense. (*Id.* at ¶¶ 81-83; Ex. C.)

26. The Association alleges that, as of the time of the filing of the *40 S. Ashland* Action, Ashland Harris had failed to remediate the Property and breached the tolling agreement. (*Id.* at pp. 11-14.)

27. The underlying plaintiffs allege that Individual Defendants breached their fiduciary duties to the unit owners through one or more of the following acts or omissions:

(a) Failing to ensure the Building was built consistent with the architectural plans;
(b) Failing to inspect the building during and after construction;
(c) Failing to timely place the Building contractor on notice of default for defective workmanship;
(d) Failing to bring legal action against the contractor for defective workmanship;
(e) Failing to timely place the architect on notice of or [sic] workmanship and building defect issues;
(f) Failing to bring legal action against the architect for design or building defects;
(g) Failing to fund Association reserves sufficient to address the known building defects;
(h) Failing to repair and replace the Unit and Common Elements;
(i) Failing to disclose to Owners and new purchasers of the known Building construction defects and an [sic] the likely need for a special assessment; and,
(j) Failing to otherwise act consistent with their fiduciary obligation.

(*Id.* at ¶ 120.)

28. The Association alleges that the Individual Defendants' breach of fiduciary duties

6

was willful and wanton. (*Id.* at ¶ 126.)

29. The *40 S. Ashland* Action seeks actual damages in excess of $30,000 as to each count, including that alleged against the Individual Defendants, as well as attorneys' fees and costs. (*Id.* at pp. 14-17.)

### *The Policy*

30. Hanover issued the Policy to the Association for the policy period October 15, 2018 to October 15, 2019. (*See* Ex. 1, Declarations).

31. The Policy provides coverage in relevant part under the Policy's Businessowners Coverage Form ("Businessowners Form"), and under the Policy's Businessowners Condominium, Co-op, and Association Directors and Officers Liability endorsement ("D&O Liability Endorsement"), which provides certain coverage on a claims-made basis. (*Id.* at Endorsement 391-2012 08 16, Schedule.)

32. Subject to all of its terms and conditions, the Businessowners Form provides in relevant part that Hanover:

> will pay those sums the insured becomes legally obligated to pay as "damages" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. [It] will have the right and duty to defend the insured against any "suit" seeking those "damages". However, [it] will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply…

(*Id.* at Sec. II.A.1.a.)

33. The relevant insurance afforded under the Businessowners Form applies:

(1) to "bodily injury" or "property damage" only if:

    (a) The "bodily injury" or "property damage" is caused by an "occurrence"…;
    (b) The "bodily injury" or "property damage" occurs during the policy period; and
    (c) Prior to the policy period, no insured … knew the "bodily injury" or "property damage" had occurred in whole or in part.

(*Id.* at Section II.A.1.b.)

34. Subject to all of its terms and conditions, the D&O Liability Endorsement provides, for purposes of coverage provided thereunder, that Hanover:

> will pay those sums the insured becomes legally obligated to pay as "damages" arising out of a "wrongful act" to which this insurance applies. [It] will have the right and duty to defend the insured against any "suit" seeking those "damages". However, [it] will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply…

(*Id.* at Sec. II.A.1.a., as amended by End. 391-2012 08 16.)

35. The D&O Liability Endorsement further provides as follows:

> This insurance applies to a "'wrongful act" only if the "wrongful act" is not an action for which Directors are not entitled to indemnification under the General Not-For Profit Corporation Act of 1986 [the "Non-Profit Act"] or the declaration or bylaws of the association.

(*Id.* at Sec. II.A.1.a., as amended by End. 391-1890 06 15.)

36. The Illinois Non-Profit Act ("Non-Profit Act") and the Association's declaration and bylaws govern whether the Association is permitted to indemnify its directors.

37. If a director is alleged to have acted willfully, indemnification is not permissible under the Non-Profit Act and/or the Association's declaration or bylaws, and thus would not be covered. (*See* Ex. 1, at Sec. II.A.1.a.)

38. The Policy defines "insured" to include the Association, as well as its:

> past, present, or future officers, trustees, members of the Board of Directors, or 'employees' of the Board of Directors, but only for acts within the scope of their employment by [the Association], while acting in their capacity as members of the Board of Directors or while performing duties related to the conduct of [the Association's] business.

(*Id.* at Sec. II.C.1 and II.C.2, as amended by Ends. 391-2012 08 16 and 391-1890 06 15.)

39. The Policy's definition of "insured" also includes "[e]ach individual unit-holder ... of the insured condominium, but only for liability arising out the ownership, maintenance or repair of that portion of the premises which is not owned solely by the unit-owner." (*Id.* at Sec. II.C., as amended

8

by End. 391-1966 08 16).

40. Further, each unit owner "is an insured person with respect to liability arising out of the unit-owner's interest in the common elements or membership in the condominium association." (*Id.*)

41. For purposes of coverage provided under the D&O Endorsement, the Association is also an "insured" with respect to "'claims' for which [it] may be obligated to indemnify [its] past, present or future directors, officers, or trustees ...." (*Id.* at Sec. II.C.4., as amended by End. 391-2012 08 16.)

42. However, the Businessowners Form and D&O Liability Endorsement provide that "no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." (*Id.* at Sec. II.C.3, and End. 391-2012 08 16.)

43. Non-party Ashland Harris is a limited liability company, is not an insured under the Policy, and is not shown as a Named Insured in the Declarations. (*See id.*)

44. The Policy defines "Wrongful Act" as:

> any actual or alleged negligent act, error, omission, misstatement or misleading statement, neglect, or breach of duty by an insured while acting in the scope of their duties as a Director or Officer of the Named Insured, or any matter claimed against the insured solely by reason of their serving as a Director or Officer for the Named Insured. This does not apply to a position or capacity in any entity other than the named insured association, even if the named insured association directed or requested the insured to serve in such other position or capacity.

(*Id.* at Section II.F.4., as amended by End. 391-2012 08 16.)

45. For purposes of coverage provided under the D&O Liability Endorsement, the insurance applies to "damages" only if:

> (1) The "damages" are caused by a "wrongful act" …;
> (2) The "wrongful act" occurs on or after the Retroactive Date …;

9

(3) The "claim" for "damages" because of the "wrongful act" is first made against you during the policy period …; and

(4) Prior to the inception date of the first Businessowners Condominium, Co-op, and Association Directors and Officers Liability endorsement issued and continuously renewed by [Hanover], no insured listed under section C. Who Is An Insured, paragraph 1. and no "employee" authorized by you to give or receive notice of a "wrongful act" or claim knew that the "wrongful act" had occurred, in whole or in part.

(*Id.* at Sec. II.A.1.b., as amended by End. 391-2012 08 16.)

46. The Retroactive Date is defined as October 15, 2017. (*Id.* at Endorsement 391-2012 08 16, Schedule.)

47. The D&O Liability Endorsement includes a "Cross Insured Claims" exclusion for any "damages sustained by any insured that arise out of the activities of any other person or organization qualifying as an insured under this policy." (*Id.* at Sec. II.B.1.g., added by End. 391-2012 08 16.)

48. The D&O Liability Endorsement also includes an exclusion for:

"Damages" expected or intended from the standpoint of the insured, as well as "damages" arising out of:

(1) Any fraudulent, dishonest, criminal or malicious act or omission;
(2) Willful misconduct;
(3) Knowing violation of rights or law; or
(4) Gaining of any profit or advantage to which you are not legally entitled;

by the insured or any person for whom the insured is legally responsible.

(*Id.* at Section II.B.1.a., as amended by End. 391-2012 08 16.)

49. The D&O Liability Endorsement contains a Professional Services exclusion, which excludes damages:

arising out of the rendering of or failure to render any professional service, advice or instruction:

(1) By you; or
(2) On your behalf; or

10

> (3) From whom any of you assumed liability by reason of a contract or agreement, regardless of whether any such service, advice or instruction is ordinary to any insured's profession.
>
> This exclusion applies even if a claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "wrongful act" that caused the "damages" involved the rendering of or failure to render any professional service.

(*Id.* at Sec. II.B.1.j., as amended by End. 391-2012 08 16.)

50. Finally, the Policy gives Hanover the right to reimbursement of defense costs paid on behalf of an insured, as follows:

> If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

(Ex. 1, Sec. II.A., added by End. BP 06 43 04 06.)

### *The Individual Defendants Seek Coverage*

51. On June 7, 2019, the Individual Defendants tendered the *40 S. Ashland* Action to Hanover for coverage under the Policy through a first notice of loss notice form. (A true and correct copy of the notice of loss is attached as Exhibit 4.)

52. By letter dated September 10, 2019, Hanover agreed to provide a defense to the Individual Defendants under the Policy, subject to a full reservation of rights, including the right to withdraw from the defense, to seek reimbursement of any defense costs it pays, and to file a declaratory action. (A true and correct copy of the letter is attached as Exhibit 5.) (Ex. 5, pp. 7-8.)

53. Hanover, through its counsel, issued a supplemental letter dated December 18, 2019, informing the Individual Defendants of Policy provisions, *supra*, that may limit coverage, and again advising that Hanover reserved its right to terminate the defense obligation, seek

reimbursement of defense costs, and deny coverage for any indemnity. (A true and correct copy of the letter is attached as Exhibit 6.) (Ex. 1, Sec. II.A, End. BP 06 43 04 06; Ex. 6, p. 1.)

54. In particular, Hanover advised that the Association made no claims of bodily injury or property damage or personal and advertising injury to which the insurance applies, and further advised that the *40 S. Ashland* Action did not involve an accidental occurrence.

55. Hanover further advised the Individual Defendants that they are not covered under the Policy with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations or the extent they were not acting in their insured capacities. (Ex. 1 at Sec. II.A.1.b., as amended by End. 391-2012 08 16; Ex. 6 at pp. 1-2.)

56. Hanover further advised the Individual Defendants that the Policy does not cover conduct for which they would not be entitled to indemnification from the Association under the Non-Profit Act or the Association's declaration or bylaws, and pointed out that Individual Defendants would not be entitled to such indemnification for "willful and wanton" acts and that the Policy would therefore not afford coverage for such conduct. Hanover also advised that the Policy affirmatively excludes coverage for willful acts. (Ex. 1 at Sec. A.1., as amended by End. 391-1890 06 15; Ex. 2, ¶ 126; Ex. 6 at pp. 2-3; 805 ILSC 105/108.10(a).) (Ex. 1 at Sec. II.B.1.a., as amended by End. 391-2012 08 16; Ex. 6 at pp. 3-4.)

57. Hanover further advised the Individual Defendants that there is no coverage for damages arising out of a Cross Insured Claim, and pointed out that the *40 S. Ashland* Action was brought by the insured Association asserting claims assigned by individual unit holder insureds, and thus was not covered. (Ex. 1, Sec. II.C., as amended by End. 391-1966 08 16; Ex. 6 at p. 6.)

58. Hanover further advised that there is no coverage available for any alleged conduct

12

that occurred after February 5, 2018 (when the Individual Defendants were no longer serving as directors on the Association's board and could not have been acting in an insured capacity) or prior to the October 15, 2017 retroactive date. (Ex. 1 at Sec. II.F.4., as amended by End. 391-2012 08 16; Ex. 6 at p. 4). (Ex. 1, Sec. II.A.1.b., as amended by End. 391-2012 08 16; Ex. 6 at p. 5.)

59. Hanover further advised that the alleged construction defects were not the result of a "Wrongful Act," but instead were caused by Ashland Harris or other non-insured parties. (Ex. 1, Sec. II.A.1.b., as amended by End. 391-2012 08 16; Ex. 6 at p. 5.)

60. Hanover reserved the right to deny coverage on the basis that a claim was first made prior to the inception of the policy period, and thus, the *40 S. Ashland* Action did not state a claim first made within the policy period. (Ex. 1, Sec. II.A.1.b., as amended by End. 391-2012 08 16; Ex. 6 at pp. 5-6.)

61. Hanover also reserved the right to deny coverage to the extent the Individual Defendants had knowledge that a Wrongful Act occurred prior to the inception date in the Policy's schedules, i.e., October 15, 2017. (Ex. 1, Sec. II.A.1.b., as amended by End. 391-2012 08 16; Ex. 6 at p. 6.)

62. Hanover also reserved the right to deny coverage on the basis that there is no coverage under the Policy for the rendering or failure to render professional services, including the initial construction and remediation that resulted in or failed to correct the sound transference issues. (Ex. 1, Sec. II.B.1.j., as amended by End. 391-2012 08 16; Ex. 6, p. 7.)

63. Hanover also reserved the right to assert that the Policy is excess over any other available insurance, and thus is not the primary policy responsible for defending the Individual Defendants against the *40 S. Ashland* Action. (Ex. 1, Sec. III.H; Ex. 6, pp. 7-8)

64. Finally, Hanover noted that coverage may be void under the Policy, to the extent it

is determined there was any fraud, concealment, or misrepresentation of material facts concerning the Policy, the Property, the interest in the Property, or any claims under the Policy. (Ex. 1, Sec. III.C; Ex. 6, p. 8.)

65. To date, out of an abundance of caution, Hanover has provided a defense to the Individual Defendants subject to a complete reservation of rights; however, efforts to resolve the *40 S. Ashland* Action have been unsuccessful and given the posture of the *40 S. Ashland* Action and the unlikelihood of settlement, Hanover now seeks to adjudicate its defense and indemnification obligations under the Policy.

66. Accordingly, Hanover now seeks a declaration that there is no coverage for the Defendants under the Policy for the *40 S. Ashland* Action.

## COUNT I
**(Declaratory Judgment – No Duty to Defend the Individual Defendants)**

67. Hanover repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68. An actual controversy exists between Hanover and Defendants with respect to Hanover's defense obligations under the Policy, if any, to the Individual Defendants for the *40 S. Ashland* Action.

69. Hanover is entitled to a declaration that it has no duty under the Policy to defend the Individual Defendants in connection with the *40 S. Ashland* Action because the Association does not claim bodily injury or property damage or personal and advertising injury to which the insurance applies, and because the *40 S. Ashland* Action does not involve an occurrence.

70. Hanover is entitled to a declaration that it has no duty under the Policy to defend the Individual Defendants in connection with the *40 S. Ashland* Action because the Policy does not provide coverage for alleged conduct undertaken by the Individual Defendants other than in

14

their capacity as directors of the Association.

72. Hanover is entitled to a declaration that it has no duty under the Policy to defend the Individual Defendants in connection with the *40 S. Ashland* Action because the *40 S. Ashland* Action concerns the conduct of Ashland Harris (a limited liability company not identified as a Named Insured) and the Individual Defendants (the so-called Developer Board) are not insureds with respect to such conduct.

72. Hanover is entitled to a declaration that it has no duty under the Policy to defend the Individual Defendants in connection with the *40 S. Ashland* Action because: the Individual Defendants are not entitled to indemnification from the Association under the Non-Profit Act or the Association's declaration or bylaws for alleged "willful and wanton" acts and there is no coverage under the Policy for such conduct, and because the Policy also affirmatively excludes coverage for willful acts.

73. Hanover is entitled to a declaration that it has no duty under the Policy to defend the Individual Defendants in connection with the *40 S. Ashland* Action because any alleged wrongful conduct occurred after February 5, 2018 (when the Individual Defendants were no longer serving as directors on the Association's board and could not have been acting in an insured capacity) or prior to the October 15, 2017 retroactive date.

74. Hanover is entitled to a declaration that it has no duty under the Policy to defend the Individual Defendants in connection with the *40 S. Ashland* Action because the suit is a Cross Insured Claim, brought by the insured Association asserting claims assigned by individual unit holder insureds against the Individual Defendants, who were former board members, and thus, is wholly excluded from coverage.

75. Hanover is entitled to a declaration that it has no duty under the Policy to defend

15

the Individual Defendants in connection with the *40 S. Ashland* Action because the suit arises out of the rendering or failure to render professional services in the construction and remediation of the Property, and thus, no coverage is available.

76. Because there can be no duty to indemnify for one or more of the reasons listed above, Hanover has no continuing duty to defend the Individual Defendants.

## COUNT II
**(Declaratory Judgment – No Duty to Indemnify)**

77. Hanover repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78. An actual controversy exists between Hanover and Defendants with respect to Hanover's indemnification obligations under the Policy, if any, to the Defendants for the *40 S. Ashland* Action.

79. Hanover is entitled to a declaration that it has no duty under the Policy to indemnify Defendants in connection with the *40 S. Ashland* Action because the Association does not claim bodily injury or property damage or personal and advertising injury to which the insurance applies, and because the *40 S. Ashland* Action does not involve an occurrence.

80. Hanover is entitled to a declaration that it has no duty under the Policy to indemnify Defendants in connection with the *40 S. Ashland* Action because the Policy does not provide coverage for any alleged actions undertaken by the Individual Defendants other than in their capacity as directors of the Association.

81. Hanover is entitled to a declaration that it has no duty under the Policy to indemnify Defendants because the *40 S. Ashland* Action concerns the conduct of Ashland Harris (a limited liability company not identified as a Named Insured) and the Individual Defendants (the so-called Developer Board) are not insureds with respect to such conduct.

16

82. Hanover is entitled to a declaration that it has no duty under the Policy to indemnify the Defendants in connection with the *40 S. Ashland* Action because: the Individual Defendants are not entitled to indemnification from the Association under the Non-Profit Act or the Association's declaration or bylaws for alleged "willful and wanton" acts and there is no coverage under the Policy for such conduct; and the Policy also excludes coverage for willful acts.

83. Hanover is entitled to a declaration that it has no duty under the Policy to indemnify Defendants in connection with the *40 S. Ashland* Action because any alleged wrongful conduct occurred after February 5, 2018 (when the Individual Defendants were no longer serving as directors on the Association's board and could not have been acting in an insured capacity) or prior to the October 15, 2017 retroactive date.

84. Hanover is entitled to a declaration that it has no duty under the Policy to indemnify Defendants in connection with the *40 S. Ashland* Action because the suit is a Cross Insured Claim, brought by the insured Association asserting claims assigned by individual unit holder insureds against the Individual Defendants, who were former board members of the Association, and thus, is wholly excluded from coverage.

85. Hanover is entitled to a declaration that it has no duty under the Policy to indemnify Defendants in connection with the *40 S. Ashland* Action because the suit arises out of the rendering or failure to render professional services in the construction and remediation of the Property, and thus, no coverage is available.

## **COUNT III**
**(Reimbursement of Defense Costs)**

86. Hanover repeats and realleges paragraphs 1 through 85 above as if fully set forth herein.

87. Hanover advised the Individual Defendants that it may seek reimbursement of

17

defense costs to the extent it determines a claim is not covered.

88. If it is determined that Hanover has no duty to defend or indemnify Defendants, Hanover seeks reimbursement of all defense costs incurred through the date upon which its defense obligation is determined or otherwise terminated.

## PRAYER FOR RELIEF

WHEREFORE, Hanover seeks:

1. A declaration that Hanover has no duty to defend the Individual Defendants for the following reasons:

   A. the Association does not claim bodily injury or property damage or personal and advertising injury to which the insurance applies and the *40 S. Ashland* Action does not involve an occurrence;

   B. they were not acting in an insured capacity on behalf of Association;

   C. they are not insureds with respect to the conduct of Ashland Harris, a limited liability company not shown as a Named Insured in the Policy's declarations.

   D. they are alleged to have engaged in willful and wanton acts, and thus are not covered because they are not entitled to indemnification from the Association under the Non-Profit Act or the Association's declaration or bylaws and also because the Policy specifically excludes such conduct;

   E. the alleged conduct occurred after February 5, 2018 (when the Individual Defendants no longer served as directors on the Association's board and could not be Wrongful Acts), or before the October 15, 2017 retroactive date;

   F. the *40 S. Ashland* Action is a Cross Insured Claim, which is wholly excluded by the Policy;

   G. the *40 S. Ashland* Action arises out of the rendering or failure to render professional services, and thus is wholly excluded by the Policy; and

   H. for such other reasons as may apply, including those for which Hanover reserved its rights in communications with the Individual Defendants.

2. A declaration that Hanover has no duty to indemnify the Defendants for the

following reasons:

    A.    the Association does not claim bodily injury or property damage or personal and advertising injury to which the insurance applies and the *40 S. Ashland* Action does not involve an occurrence;

    B.    the Individual Defendants were not acting in an insured capacity on behalf of Association;

    C.    are not insureds with respect to the conduct of Ashland Harris, a limited liability company not shown as a Named Insured in the Policy's declarations;

    D.    the Individual Defendants are alleged to have engaged in willful and wanton acts, and thus are not covered because they are not entitled to indemnification from the Association under the Non-Profit Act or the Association's declaration or bylaws and also because the Policy specifically excludes such conduct;

    E.    the alleged conduct occurred after February 5, 2018 (when the Individual Defendants no longer served as directors on the Association's board and could not be Wrongful Acts) or before the October 15, 2017 retroactive date;

    F.    the *40 S. Ashland* Action is a Cross Insured Claim, which is wholly excluded by the Policy;

    G.    the *40 S. Ashland* Action arises out of the rendering or failure to render professional services, and thus is wholly excluded by the Policy; and

    H.    for such other reasons as may apply, including those for which Hanover reserved its rights in communications with the Individual Defendants.

3.    All defense costs paid by Hanover;

4.    For any other relief that this Court finds just and proper.

Dated: May 18, 2021                      Respectfully submitted,

/s/ Cassandra L. Jones
Cassandra L. Jones (#6309352)
James J. Huberty (#6256115)
Neil E. Holmen (#1250027)
WALKER WILCOX MATOUSEK LLP
One North Franklin Street, Suite 3200

Chicago, Illinois 60606
Telephone: (312) 244-6700
Facsimile: (312) 244-6800
cjones@walkerwilcox.com
jhuberty@walkerwilcox.com
nholmen@walkerwilcox.com

*Attorneys for Plaintiff Citizens Insurance Company of America*