# EXHIBIT 2

FILED DATE: 8/29/2019 1:15 PM  2019L005143

FILED
8/29/2019 1:15 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019L005143

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| 40 S. ASHLAND CONDOMINIUM ASSOCIATION, an Illinois not-for-profit Corporation, as assignee of Todd J. Rapp, Alaine R. Rapp, Donna L. McDevitt, Jean M. Unger as Trustee of the Jean M. Unger Revocable Trust dated September 28, 2010, Doris J. Bryant, Daniel R. Gross, John G. Byrnes, Thomas J. and Erin H. Marthalec as Trustees of the Thomas J. and Erin H. Marthalec Trust dated November 1, 2014, Kenneth Kostal, Judith Ann Kostal, Thomas R. Lowry, Thomas L. Berg, Karen S. Susala As Trustee of the William E. Haworth Irrevocable Trust dated December 27, 2012, Susan Lyons, and Patricia Garcia, <br><br> Plaintiff, <br> v. <br><br> ASHLAND HARRIS, L.L.C., an Illinois limited liability company; NICHOLAS MARIETTI, an individual; ROBERT PALLEY, an individual; and JAKE GANTZ, an individual, <br> Defendants. | No. 19-L-5143 |

**VERIFIED AMENDED COMPLAINT AT LAW**

NOW COMES the Plaintiff, 40 S. Ashland Condominium Association, an Illinois not-for-profit Corporation, as assignee of Todd J. Rapp, Alaine R. Rapp, Donna L. McDevitt, Jean M. Unger as Trustee of the Jean M. Unger Revocable Trust dated September 28, 2019, Doris J. Bryant, Daniel R. Gross, John G. Byrnes, Thomas J. and Erin H. Marthalec as Trustees of the Thomas J. and Erin H. Marthalec Trust dated November 1, 2014, Kenneth Kostal, Judith Ann Kostal, Thomas R. Lowry, Thomas L. Berg, Karen S. Susala as Trustee of the William E. Haworth Irrevocable Trust dated December 27, 2012, Susan Lyons, and Patricia Garcia ("Plaintiff Association"), by and through its attorneys, Keough & Moody, P.C., and as and for its Verified Amended Complaint

FILED DATE: 8/29/2019 1:15 PM 2019L005143

at Law against Defendants Ashland Harris, L.L.C., an Illinois limited liability company; Nicholas Marietti, an individual; Robert Palley, an individual; and Jake Gantz, an individual, states as follows:

## Parties, Jurisdiction, and Venue

1. 40 S. Ashland Condominium Association ("Association") is a five-story, seventeen (17) unit luxury condominium building located in La Grange, Illinois ("Property").

2. The Association is registered as an Illinois not-for-profit Corporation located in LaGrange, Illinois, and the Association conducts its business exclusively within Cook County.

3. The Association was created pursuant to the Illinois Condominium Property Act, 765 ILCS 605/1 *et seq*. ("Act") by the recording of the Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and Bylaws for the 40 S. Ashland Condominiums, recorded with the Cook County Recorder of Deeds as Document Number 1712929022 ("Declaration"). A true and correct copy of the Declaration is attached hereto as **Exhibit A**.

4. The Association, through its elected Board of Directors ("Board"), governs and administers the Property pursuant to the Declaration and the Act.

5. Todd J. Rapp and Alaine R. Rapp are the Owners of the condominium unit within the Association commonly known as Unit 1B.

6. Todd J. Rapp and Alaine R. Rapp became parties to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when they purchase Unit 1B. A true and correct copy of an exemplar Purchase Agreement, including the Warranty, is attached hereto as **Exhibit B**.

2

FILED DATE: 8/29/2019 1:15 PM 2019L005143

7. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. A true and correct copy of the Tolling Agreement is attached hereto as **Exhibit C**.

8. On August 23, 2019, Todd J. Rapp and Alaine R. Rapp assigned their rights and remedies under the Warranty to the Association for enforcement via written Assignment. A true and correct copy of the Assignment is attached hereto as part of group **Exhibit D**.

9. Donna L. McDevitt is the Owner of the of the condominium unit within the Association commonly known as Unit 2A.

10. Donna L. McDevitt became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when she purchased Unit 2A. **Exhibit B**.

11. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

12. On August 22, 2019, Donna L. McDevitt assigned her rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

13. Jean M. Unger as Trustee of the Jean M. Unger revocable Trust dated September 28, 2010 is the Owner of the of the condominium unit within the Association commonly known as Unit 2D.

14. Jean M. Unger as Trustee of the Jean M. Unger revocable Trust dated September 28, 2010 became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when the trust purchased Unit 2D. **Exhibit B**.

15. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

3

FILED DATE: 8/29/2019 1:15 PM  2019L005143

16. On August 21, 2019, Jean M. Unger as Trustee of the Jean M. Unger revocable Trust dated September 28, 2010 assigned her rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

17. Doris J. Bryant is the Owner of the of the condominium unit within the Association commonly known as Unit 3A.

18. Doris J. Bryant became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when she purchased Unit 3A. **Exhibit B**.

19. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

20. On August 22, 2019, Doris J. Bryant assigned her rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

21. Daniel R. Gross is the Owner of the of the condominium unit within the Association commonly known as Unit 3D.

22. Daniel R. Gross became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when he purchased Unit 3D. **Exhibit B**.

23. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

24. On August 22, 2019, Daniel R. Gross assigned his rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

25. John G. Byrnes is the Owner of the of the condominium unit within the Association commonly known as Unit 3E.

26. John G. Byrnes became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when he purchased Unit 3E. **Exhibit B**.

27. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

28. On August 22, 2019, John G. Byrnes assigned his rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

29. Thomas J. and Erin H. Marthalec as Trustees of the Thomas J. and Erin H. Marthalec Trust dated November 1, 2014 is the Owner of the of the condominium unit within the Association commonly known as Unit 4A.

30. Thomas J. and Erin H. Marthalec as Trustees of the Thomas J. and Erin H. Marthalec Trust dated November 1, 2014 became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when the purchased Unit 4A. **Exhibit B**.

31. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

32. On August 22, 2019, Thomas J. and Erin H. Marthalec as Trustees of the Thomas J. and Erin H. Marthalec Trust dated November 1, 2014 assigned their rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

33. Kenneth Kostal and Judith Ann Kostal are the Owners of the of the condominium unit within the Association commonly known as Unit 4D.

34. Kenneth Kostal and Judith Ann Kostal became parties to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when they purchased Unit 4D. **Exhibit B**.

35. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

5

FILED DATE: 8/29/2019 1:15 PM   2019L005143

36. On August 25, 2019, Kenneth Kostal and Judith Ann Kostal assigned their rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

37. Thomas R. Lowry and Thomas L. Berg are the Owners of the of the condominium unit within the Association commonly known as Unit 4E.

38. Thomas R. Lowry and Thomas L. Berg became parties to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when they purchased Unit 4E. **Exhibit B**.

39. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

40. On August 22, 2019, Thomas R. Lowry and Thomas L. Berg assigned their rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

41. Karen S. Susala as Trustee of the William E. Haworth irrevocable trust dated December 27, 2012 is the Owners of the of the condominium unit within the Association commonly known as Unit 5A.

42. Karen S. Susala as Trustee of the William E. Haworth irrevocable trust dated December 27, 2012 became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when she purchased Unit 5A. **Exhibit B**.

43. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

44. On August 21, 2019, Karen S. Susala as Trustee of the William E. Haworth irrevocable trust dated December 27, 2012 assigned her rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

FILED DATE: 8/29/2019 1:15 PM 2019L005143

45. Susan Lyons is the Owners of the of the condominium unit within the Association commonly known as Unit 5B.

46. Susan Lyons became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when she purchased Unit 5B. **Exhibit B**.

47. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

48. On August 22, 2019, Susan Lyons assigned her rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

49. Patricia Garcia is the Owner of the of the condominium unit within the Association commonly known as Unit 2C.

50. Patricia Garcia became a party to a Certificate of Limited Warranty ("Warranty") with Ashland Harris, L.L.C. when she purchased Unit 2C. **Exhibit B**.

51. That Warranty was extended by the execution of a Tolling Agreement, and remains in full force and effect. **Exhibit C**.

52. On August 26, 2019, Patricia Garcia assigned her rights and remedies under the Warranty to the Association for enforcement via written Assignment. Group **Exhibit D**.

53. Defendant Ashland Harris, L.L.C. ("Ashland") is registered as an Illinois limited liability company with its principal place of business in Chicago, Illinois. Ashland routinely conducts business in Cook County, Illinois.

54. Section 18.2 of the Act provides that, prior to the election of the initial Unit Owner Board ("Turnover"), the developer shall have and perform the same rights, duties and obligations as will be vested in the Unit Owner Board under the Act and the Declaration once the Unit Owner Board is elected.

7

55. Prior to the election of the first Unit Owner Board, Ashland administered the Association as provided in Section 18.2 of the Act.

56. Defendant Nicholas Marietti ("Marietti") is an employee, member and/or agent of Ashland, and administered the Association prior to Turnover on behalf of the developer pursuant to Section 18.2. *See* Articles of Incorporation attached hereto as **Exhibit E**.

57. Defendant Robert Palley ("Palley") is a member, manager or agent of Ashland and administered the Association prior to Turnover on behalf of the developer pursuant to Section 18.2. **Exhibit E**.

58. Defendant Jake Gantz ("Gantz") administered the Association prior to Turnover on behalf of the developer pursuant to Section 18.2. **Exhibit E**. (Defendants Marietti, Palley, and Gantz are hereinafter collectively referred to as the "Individual Defendants").

59. The Property and all alleged occurrences at issue in this case are located in or occurred in Cook County, Illinois, and all Defendants reside, are located in, and regularly conduct business in Cook County, Illinois.

60. This Court has subject matter jurisdiction over this matter, and venue is proper in this Court pursuant to 735 ILCS 5/2-101.

## Facts Common to All Counts

61. Ashland was the developer of the Property. *See* **Exhibit A**.

62. In its capacity as developer, Ashland performed or selected and retained others to perform design and construction services for the Property.

63. Ashland developed and caused the Property, including the common elements and residential units thereof, to be designed, constructed, sold and enjoyed as newly constructed, luxury residential condominium units.

8

64. Ashland began selling residential units at the property on or around May 8, 2017.

65. The Purchase Agreements for unit sales included a Certificate of Limited Warranty ("Warranty"). **Exhibit B**.

66. The Warranty, in relevant part, provides that "[Ashland] warrants that the Purchased Residential Unit and the Common Elements and Limited Common Elements…will be free from latent defects due to faulty materials or workmanship and from major construction defects…" **Exhibit B**.

67. Residential units began to be completed and habitable in or around early summer, 2017, and owners began to move into units within the Association on or around that time.

68. Beginning during the summer of 2017, various owners discovered sound transference issues; specifically, owners observed that impact sounds unreasonably transferred between units at the Property.

69. The sound transference between units interfered with owners' use and enjoyment of their units for residential purposes.

70. On or around December 21, 2017, unit owners had a meeting with Marietti and the Architect for the project to discuss the sound transference issues.

71. On or around April 2, 2018, while addressing a leak in a unit, the Architect opened ceiling and floor assembly and discovered that it was not constructed as required by architectural drawings, which variation caused or contributed to the sound transference issues.

72. Marietti retained sound engineering firm Talaske Group, Inc. ("Talaske") to perform sound testing within the Property.

9

FILED DATE: 8/29/2019 1:15 PM 2019L005143

73. On July 12, 2018, Talaske issued a report which concluded that sound performance results for the Property's floor/ceiling system fell short of the standard for luxury residential buildings. A true and correct copy of the Talaske report is attached hereto as **Exhibit F**.

74. Talaske prepared ceiling detail drawings that Marietti shared with the Board, which recommended the installation of additional insulation and other materials to address the sound transference problem.

75. Marietti attended a meeting of the Board on July 23, 2018, at which time he suggested an alternate solution to Talaske's recommendation, including installation of rubber sound isolating material between the subfloor and finished floor.

76. During the month of August, 2018, Marietti tested his suggested remediation.

77. Marietti and Jonathan Shack, owner of JCS, attended a meeting of the Board on September 10, 2018, and announced a plan to implement a solution to the sound transference issues and would discuss replacement of unit flooring with each individual unit owner.

78. After the September 10, 2018, Board meeting, instead of implementing the tested and effective solution, Marietti suggested a different mechanism to address the sound transference issues, which included cutting holes in ceilings and blowing in insulating material.

79. In addition to the sound transference issues, Ashland has failed and refused to complete building (and unit owners) punch list items, including but not limited to: viewing window in door to main garage near elevator unresolved defects, missing or malfunctioning door hinges, garage not sealed or pressure washed, concrete balconies and patios not waterproofed, rusting railings on patios, lintels required touch-up, and cracks around certain windows required repair and, settlement cracks required repair.

FILED DATE: 8/29/2019 1:15 PM   2019L005143

80. Marietti was notified of the punch list items in a timely manner and promised to remediate them.

81. On November 8, 2018, in reliance on Marietti's multiple promises that Ashland would take all steps necessary to remediate the sound transference issue and address the punch list items, the Board executed a Tolling Agreement with Ashland in lieu of pursuing immediate legal action. **Exhibit C**.

82. The Tolling Agreement requires Ashland to utilize due diligence to remediate the sound transmission issues and punch list items as quickly, efficiently, safely, and effectively as possible. Such remediation shall be at Ashland's sole cost and expense. **Exhibit C**.

83. The Tolling Agreement acknowledges that all owners made valid and timely warranty claims regarding the sound transference issues and punch list items, and provides that the warranty period would not continue to run while the Tolling Agreement was in place. **Exhibit C**.

84. From the date of incorporation of the Association on April 25, 2017, until the date the Association was turned over to the unit owners on February 8, 2018 ("Turnover"), the Individual Defendants administered the Association. **Exhibit E**.

### Count I:  Breach of Express Warranty (Ashland)

85. Plaintiff incorporates by reference Paragraphs 1 through 84 of this Verified Amended Complaint at Law as and for Paragraph 85 of this Count I as though fully restated herein.

86. The Warranty was included as part of each purchase agreement for each unit.

87. Each individual unit owner has standing to enforce the Warranty against Ashland.

88. Todd J. Rapp, Alaine R. Rapp, Donna L. McDevitt, Jean M. Unger as Trustee of the Jean M. Unger Revocable Trust dated September 28, 2010, Doris J. Bryant, Daniel R. Gross,

11

FILED DATE: 8/29/2019 1:15 PM   2019L005143

John G. Byrnes, Thomas J. and Erin H. Marthalec as Trustees of the Thomas J. and Erin H. Marthalec Trust dated November 1, 2014, Kenneth Kostal, Judith Ann Kostal, Thomas R. Lowry, Thomas L. Berg, Karen S. Susala as Trustee of the William E. Haworth Irrevocable Trust dated December 27, 2012, Susan Lyons, and Patricia Garcia (hereinafter collectively referred to as "Assignors") each assigned to the Association his/her/its right to enforce the Warranty by executing an assignment agreement. **Exhibit D**.

89. The Association brings this Count I as the assignee of Assignors.

90. The Association stands in the shoes of Assignors to enforce Assignors' rights under the Warranty for each unit.

91. The Warranty provides, in relevant part, as follows:

> For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, [Ashland] warrants that the Purchased Residential Unit and the Purchase Parking Space(s) (if applicable), the Common Elements and the Limited Common Elements will be free from latent defects due to fault materials or workmanship and from major construction defects, except as limited and clarified in this Certificate of Limited Warranty.

**Exhibit B** at Paragraph I E.

92. The Warranty provides, in relevant part, as follows:

> If a latent defect occurs in an item that is covered by this Limited Warranty, the Warrantor will repair, replace, or pay you the reasonable cost of repairing or replacing the defective item.

**Exhibit B** at Paragraph G.

93. None of the exclusions to the Warranty apply to the sound transference issue.

94. Ashland has acknowledged that the sound transference issue constitutes a defect under the Warranty and has made numerous promises to make necessary repairs to reduce unit-to-unit sound transference.

12

95. Ashland has acknowledged that members of the Association made timely claims under the Warranty with regard to the sound transference defect.

96. Ashland has not repaired, replaced, or paid to remediate the unit ceilings or floors to remediate the sound transference issues.

97. Ashland is in breach of the Warranty.

98. The Assignors have each been damaged by Ashland's breach of the Warranty in that they have or will be forced to incur costs to repair the defectively constructed ceilings and floors to remediate the sound transference issue.

WHEREFORE, Plaintiff Association prays this Honorable Court enter judgment in its favor and against Ashland Harris, LLC in an amount in excess of $30,000 to be determined at trial by the trier of fact, awarding Plaintiff Association its attorneys' fees and costs incurred in prosecuting this matter, and granting it such further or other relief as this Court deems appropriate.

## Count II: Breach of the Tolling Agreement (Ashland)

99. Plaintiff Association incorporates by reference Paragraphs 1 through 84 of this Verified Amended Complaint at Law as and for Paragraph 99 of this Count II as though fully restated herein.

100. The Tolling Agreement provides, in relevant part, that the parties shall cooperate and utilize all due diligence to repair the punch list items and sound transmission issue as quickly, safely, and effectively as possible.

101. The Tolling Agreement provides, in relevant part, that all repair work described in the preceding paragraph shall be performed by Ashland, or by contractors hired by Ashland, at Ashland's own cost and expense.

102. Ashland has not undertaken any repairs necessary to remediate the sound transmission issues or the punch list items.

103. Ashland has not utilized due diligence to remediate the sound transmission issues or punch list items.

104. Ashland has not cooperated with the Association's repeated requests to undertake measures to remediate the sound transmission issues and to address the punch list items.

105. Ashland is in breach of the Tolling Agreement.

106. The Association has been damaged by Ashland's breach of the Tolling Agreement in that it has or will be forced to incur costs to repair the defectively constructed ceilings and floors to remediate the sound transference issue, and to address the punch list items.

107. The Association has been damaged by Ashland's breach of the Tolling Agreement in that it has or will be forced to incur costs to repair the defectively constructed ceilings and floors to remediate the sound transference issue and to address the punch list items.

WHEREFORE, Plaintiff Association prays this Honorable Court enter judgment in its favor and against Ashland Harris, LLC in an amount in excess of $30,000 to be determined at trial by the trier of fact, awarding Plaintiff Association its attorneys' fees and costs incurred in prosecuting this matter, and granting it such further or other relief as this Court deems appropriate.

### **Count III: Breach of Fiduciary Duty (Individual Defendants)**

108. Plaintiff Association incorporates by reference Paragraphs 1 through 84 of this Verified Amended Complaint at Law as and for Paragraph 108 of this Count III as though fully restated herein.

109. The Individual Defendants were appointed by Ashland to perform the duties and Obligations of a Board of Directors pursuant to Section 18.2 o the Act and, from the date of

14

incorporation of the Association until the date of Turnover on or around February 8, 2018, acted in that capacity.

110. During the period of time stated in the preceding paragraph, the Individual Defendants exclusively governed, administered, and controlled the business and finances of the Association, and had the exclusive right and obligation to maintain, repair, and replace components of the Property other than purchased units.

111. Pursuant to Section 18.2 and Section 18.4 of the Act, the Individual Defendants were vested with the same rights, titles, powers, privileges, trust, duties, and obligations that are imposed on members of a unit owner board by the Act and the Declaration, including but not limited to:

    a. To inspect and observe the condition of the Property, and to provide for the operation, care, upkeep, maintenance, repair, replacement, and improvement of same;

    b. To adopt budgets that provide for reasonable reserves for deferred maintenance for repair or replacement of Property components;

    c. To levy regular and special assessments sufficient to operate the Property and address known maintenance, repair and replacement issues to Units, Common Elements and Limited Common Elements;

    d. To ensure that all work being performed at the Property was consistent with the contracts for such work and to ensure that the all work was performed in a workmanlike manner; and,

    e. To issue financial statements including provisions for reasonable reserves for future maintenance.

112. During the time the Individual Defendants had exclusive control of the Property, defects in the Property were caused and existed, including the sound transference issues created by the improperly constructed ceilings and floors.

FILED DATE: 8/29/2019 1:15 PM   2019L005143

113. The sound transference issues created by improperly constructed ceilings and floors were known to the Individual Defendants.

114. Pursuant to Sections 18.2 and 18.4 of the Act, during the time they administered the Association, the Individual Defendants owed a fiduciary duty to each Unit Owner.

115. The Individual Defendants' fiduciary duty under the Declaration and the Act required it to repair or replace defective components of the Property.

116. The Individual Defendants' fiduciary duty under the Declaration and the Act required them to budget and establish adequate reserves for deferred repairs.

117. The Individual Defendants did not repair or replace the ceiling and floor defects that cause the sound transference issues.

118. The Individual Defendants did not budget for or establish adequate reserves for deferred repairs to the ceiling and floor defects that cause the sound transference issues.

119. On the date of Turnover, the Association's reserves were under $13,932.76.

120. The Individual Defendants, individual and jointly and severally, breached their fiduciary duty to each unit owner in one or more of the following acts or omissions:

(a) Failing to ensure the Building was built consistent with the architectural plans;

(b) Failing to inspect the building during and after construction;

(c) Failing to timely place the Building contractor on notice of default for defective workmanship;

(d) Failing to bring legal action against the contractor for defective workmanship;

(e) Failing to timely place the architect on notice of or workmanship and building defect issues;

(f) Failing to bring legal action against the architect for design or building defects;

(g) Failing to fund Association reserves sufficient to address the known building defects;

FILED DATE: 8/29/2019 1:15 PM 2019L005143

(h)  Failing to repair and replace the Unit and Common Elements;

(i)  Failing to disclose to Owners and new purchasers of the known Building construction defects and an the likely need for a special assessment; and,

(j)  Failing to otherwise act consistent with their fiduciary obligation.

121. Each unit owner has been damaged by the Individual Defendants' breach of their fiduciary duty in that each unit owner has or will be forced to incur costs to repair the defectively constructed ceilings and floors to remediate the sound transference issue.

122. Each unit owner has been damaged by the Individual Defendants' breach of their fiduciary duty in that the construction defects resulted in a diminution in value of each unit owner's unit.

123. By executing the assignment agreement, each Assignor unit owner assigned to the Association his/her/its right to enforce Individual Defendants' fiduciary duty to each of them. **Exhibit D**.

124. The Association brings this Count III as the assignee of Assignors.

125. The Association stands in the shoes of Assignors to enforce Assignors' rights pursuant to Individual Defendants' fiduciary duty imposed by the Act and the Declaration.

126. Individual Defendants' breach of fiduciary duties was willful and wanton and has forced the Association, as assignee, to expend needless attorneys' fees and costs.

WHEREFORE, Plaintiff Association prays this Honorable Court enter judgment in its favor and against Nicholas Marietti, Robert Palley, and Jake Gantz, jointly and severally, in an amount in excess of $30,000 to be determined at trial by the trier of fact, awarding Plaintiff Association its attorneys' fees and costs incurred in prosecuting this matter, and granting it such further or other relief as this Court deems appropriate.

FILED DATE: 8/29/2019 1:15 PM   2019L005143

          Respectfully Submitted,
          40 S. ASHLAND CONDOMINIUM ASSOCIATION,

By: _/s/ David C. Hartwell_____

One of its attorneys

David C. Hartwell
Karen L. Beverly
***Keough & Moody, P.C.***
Attorney Number 44996
114 East Van Buren
Naperville, IL 60540
(630) 369-2700
dch@kmlegal.com
klb@kmlegal.com

18

STATE OF ILLINOIS )
) SS.
COUNTY OF COOK )

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-10 of the Code of Civil Procedure, 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this *Verified Amended Complaint* are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

By: _____
Bill Haworth, President of the Board for
40 S. Ashland Condominium Association

SUBSCRIBED and SWORN to before me
on this ___ day of August, 2019.

_____
NOTARY PUBLIC

YOLANDA SAUCEDO
Official Seal
Notary Public - State of Illinois
My Commission Expires Sep 21, 2022

FILED DATE: 8/29/2019 1:15 PM 2019L005143

19