# EXHIBIT 6



December 18, 2019

**James J. Huberty**
Tel: 312.244.6778
jhuberty@walkerwilcox.com

<u>Via E-mail</u>

Jake Gantz (Jake@vennpointre.com)
Nicholas Marietti (Nick@vennpointre.com)
Robert Palley (Rob@granitepartners.com)

| Re: | Insurer: | **Citizens Insurance Company of America** |
|---|---|---|
| | Named Insured: | **40 S. Ashland Condominium Association, Inc.** |
| | Policy No.: | **OBC D394506 01** |
| | Policy Period: | **October 15, 2018 to October 15, 2019** |
| | Matter: | ***40 S. Ashland Condominium Ass'n v. Ashland Harris, LLC, et al., No. 19-L-5143 (Ill. Cir. Ct., Cook Cty.)*** |
| | Claim No.: | **19-00464814** |

Dear Messrs. Gantz, Marietti and Palley:

This firm represents Citizens Insurance Company of America (hereinafter "Hanover") in connection with the above-captioned matter. This letter supplements, and incorporates by reference, Tracie Coleman-Tucker's September 10, 2019 letter to you, which reserved Hanover's rights regarding various provisions of the referenced policy (the "Policy"), which was issued to 40 S. Ashland Condominium Association (the "Association"). We have reviewed the amended complaint filed in the referenced lawsuit (the "Lawsuit") and other relevant materials, and we provide the following additional comments and reservations, which are not intended to be exhaustive or exclusive. Hanover continues to reserve all of its rights under the Policy, at law, or in equity. Such rights include the right to terminate the defense Hanover is providing to you and to seek reimbursement for all defense costs paid on your behalf (see Section II.A., added by Endorsement BP 06 43 04 06), and the right to deny coverage for any indemnity.

**1. <u>There is no coverage for conduct on a capacity for Ashland Harris.</u>**

Subject to all of its terms, … the Policy provides:

> [Hanover] will pay those sums the insured becomes legally obligated to pay as 'damages' arising out of a 'wrongful act' to which this insurance applies. [It] will have the right and duty to defend the insured against any 'suit' seeking those 'damages'. However, [it] will have no duty to defend the insured against any 'suit' seeking 'damages' to which this insurance does not apply."

FOUNDERS: William P. Bila   Robert P. Conlon   Edward P. Gibbons   Celeste M. King   Gary L. Lockwood   Paul F. Matousek   David E. Walker   Mark D. Wilcox

One North Franklin Street, Suite 3200
Chicago, IL 60606
312.244.6700

walkerwilcox.com

1001 McKinney Street, Suite 2000
Houston, TX 77002
713.654.8001

Jake Gantz
Nicholas Marietti
Robert Palley
December 18, 2019
Page 2

(Section II.A.1.a., as amended by End. 391-2012 08 16.) As indicated, the coverage applies to sums the insured becomes legally obligated to pay. An "insured" includes the Association's "past, present, or future officers, trustees, members of the Board of Directors, or 'employees' of the Board of Directors, but only for acts within the scope of their employment by [the Association], while acting in their capacity as members of the Board of Directors or while performing duties related to the conduct of [the Association's] business." (Section II.C.2, as amended by End. 391-1890 06 15.) However, "[n]o person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." (Section II.C., as amended by End. 391-2012 08 16.)

Plaintiff alleges that Mr. Marietti is an employee, member, and/or agent of the developer, Ashland Harris, L.L.C. ("Ashland Harris"), and that Mr. Palley is a member, manager or agent of Ashland Harris. (Am. Compl. ¶¶ 56-57.) Plaintiff further alleges that Ashland Harris "administered the Association as provided in Section 18.2 [of the Illinois Condominium Property Act]," and that all of you "administered the Association prior to Turnover on behalf of the developer pursuant to Section 18.2." (Id. ¶¶ 55-58.) Also, according to the Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and By-Laws for the 40 S. Ashland Condominiums (the "Declaration"), which was attached to the complaint, actions by the initial three-person Board were to be taken on behalf of Ashland Harris, which appointed you to the Board in or around April 25, 2017. (Declaration, Articles 5.6, 14.1.) In the Answer, you state that you were "appointed by Ashland to serve as members of the Board on behalf of the Developer, Ashland," and that you "did serve as members of the Board during that time period on behalf of Ashland…."

Ashland Harris itself is named a defendant in the Lawsuit, is a limited liability company and is not shown as a Named Insured in the Policy's Declarations. Moreover, it is clear that Ashland Harris and your actions with respect to Ashland Harris have been the focus of the plaintiff's efforts as this situation has evolved. (See, e.g. the tolling agreement dated November 8, 2018, and the February 28, 2019 letter to Howard Dakoff from David Hartwell of Keough Moody, counsel for the Association.) In light of the foregoing, Hanover reserves its right to disclaim coverage on the basis that you are not insureds with regard to the conduct alleged by the plaintiff Association.

## 2. **There is no coverage for non-indemnifiable conduct.**

The Policy applies to a "'wrongful act' only if the 'wrongful act' is not an action for which Directors are not entitled to indemnification under the General Not For Profit Corporation Act of 1986 [the "Non-Profit Act"] or the declaration or bylaws of the association." (Section A.1., as amended by End. 391-1890 06 15.) The Non-Profit Act provides that a corporation may indemnify a director "if such person acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the corporation…." (805 ILCS

Jake Gantz
Nicholas Marietti
Robert Palley
December 18, 2019
Page 3

105/108.10(a).)   The Declaration provides that the Unit Owners "shall indemnify and hold harmless each of the Indemnified Parties against all contractual and other liabilities to others arising out of contracts made or other acts of the Board … or arising out their status as Board members or officers of the Association, unless any such contract or act shall have been finally adjudged by a court to have been made fraudulently or with gross negligence." (Declaration, Section 5.9.)   However, "such indemnity shall not be operative with respect to any matter settled or compromised, unless, in the opinion of independent counsel selected by or in a manner determined by the Board, there is not reasonable ground for such persons being adjudged liable for gross negligence or fraud in the performance of his or her duties as [a] member, officer, director or employee." (Id.)

In summary, there is no coverage if you did not act in good faith or in a manner reasonably believed to be in, or not opposed to, the best interests of the Association, or if it is finally adjudged that your actions were made fraudulently or with gross negligence.  It appears there also would be no coverage in the case of a settlement unless independent counsel renders an opinion that there is no reasonable ground for you to be adjudged liable for gross negligence or fraud.  We note in this regard that the Association asserts a single count against you for breach of fiduciary duty and alleges that such breach was "willful and wanton." (Am. Compl. ¶ 126.)  In short, the Association seeks to hold you liable for conduct that is not covered under the Policy. Hanover reserves the right to disclaim coverage on this basis.

**3.   There is no coverage for willful conduct.**

The Policy excludes from coverage "damages" expected or intended from the standpoint of the insured, as well as "damages" arising out of:

  (1)  Any fraudulent, dishonest, criminal or malicious act or omission;
  (2)  Willful misconduct;
  (3)  Knowing violation of rights or law; or
  (4)  Gaining of any profit or advantage to which you are not legally entitled;

  by the insured or any person for whom the insured is legally responsible.

(Section II.B.1.a., as amended by End. 391-2012 08 16.)   The Declaration also provides that "[n]either the members of the Board, the officers of the Association or any members, managers, partners, officers, directors or employees thereof (collectively the 'Indemnified Parties') shall be liable to the Unit Owners … except for any acts or omissions finally adjudged by a court to constitute gross negligence or fraud." (Declaration, Article 5.9.)

As mentioned above, the Association alleges you engaged in willful and wanton conduct, which presumably reflects an effort to plead around the liability limitation in the Declaration.

Jake Gantz
Nicholas Marietti
Robert Palley
December 18, 2019
Page 4

However, such conduct falls squarely within the above-quoted exclusion. As such, Hanover reserves the right to disclaim coverage on this basis.

**4.  There is no coverage for conduct outside of an insured capacity.**

As indicated above, the Policy affords coverage for "wrongful acts." "Wrongful act" means "any actual or alleged negligent act, error, omission, misstatement or misleading statement, neglect, or breach of duty by an insured *while acting in the scope of their duties as a Director or Officer of the Named Insured*, or any matter claimed against the insured *solely by reason of their serving as a Director or Officer for the Named Insured*. This does not apply to a position or capacity in any entity other than the named insured association, even if the named insured association directed or requested the insured to serve in such other position or capacity." (Section II.F.4., as amended by End. 391-2012 08 16.) (Emphasis added.) Also, as mentioned above, "insureds" include members of the board of directors "while acting in their capacity as members of the Board of Directors or while performing duties related to the conduct of the [Association's] business." (Section II.C.2 (as amended by End. 391-1890 06 15).)

We understand you served on the Association's board from April 25, 2017 to February 8, 2018, which is the date the board was turned over to the Unit Owners (the "Turnover Date"). Most of the specifically alleged acts and events appear to have occurred <u>after</u> the Turnover Date (see Am. Compl. ¶¶ 72-78) and the alleged construction defects presumably occurred before April 25, 2017. In short, you would not be covered insofar as any alleged wrongful act occurred outside of the time you served on the board.

**5.  Covered damages are limited.**

The insurance applies to "damages" only if:

(1) The "damages" are caused by a "wrongful act" …;
(2) The "wrongful act" occurs on or after the Retroactive Date [10/15/17] …;
(3) The "claim" for "damages" because of the "wrongful act" is first made against you during the policy period …; and
(4) Prior to the inception date of the first Businessowners Condominium, Co-op, and Association Directors and Officers Liability endorsement issued and continuously renewed by [Hanover], no insured listed under section C. Who Is An Insured, paragraph 1. and no "employee" authorized by you to give or receive notice of a "wrongful act" or claim knew that the "wrongful act" had occurred, in whole or in part.

(Section II.A.1.b., as amended by End. 391-2012 08 16.)

Jake Gantz
Nicholas Marietti
Robert Palley
December 18, 2019
Page 5

### A. Damages not caused by a wrongful act.

It appears the alleged sound transference defects and other building deficiencies were not caused by a "wrongful act" (an action taken by an insured acting in an insured capacity as explained above). Rather, it appears they were caused by Ashland Harris and/or other non-insured parties. Hanover reserves the right to disclaim coverage on the basis that "damages" were caused by the acts of other non-insured parties, including those who allegedly failed to design, construct and/or deliver the property as contractually obligated (or to remedy any defects), rather than by wrongful acts.

### B. Wrongful act before the Retroactive Date.

The Association alleges conduct (e.g., failing to inspect the building during and after construction, etc.) that could only have occurred prior to the Retroactive Date. Taken in tandem with the insured capacity issue raised above, coverage would not be afforded insofar as a wrongful act occurred prior to October 15, 2017, or after February 8, 2018.

### C. Claim not first made during policy period.

Coverage is only afforded for claims first made during the policy period. A "claim" is "deemed to have been made … when notice of such claim is received by any insured or by [Hanover], whichever comes first…." (Section II.A.1.c., as amended by End. 391-2012 08 16.) "Claim" means "a written demand for 'damages' or a 'suit'." (Section II.F.1., as set forth in End. 391-2012 08 16.) "Damages" means a "compensatory monetary award, settlement or judgment that you become legally obligated to pay."[1] (Section II.F.2., as set forth in End. 391-2012 08 16.) "All 'claims' arising out of the same 'wrongful act' or 'interrelated wrongful acts'[2] committed by one or more insureds shall be considered a single 'claim'." (Section II.A.1.d., added by End. 391-2012 08 16.) Such single "claim" is "deemed to be first made on the date the initial 'claim' arising out of such 'wrongful act' or 'interrelated wrongful acts' was first made." (Id.)

We understand the Unit Owners first submitted complaints about the sound transference issues to one or more of you in the summer of 2017, and diagnostic efforts and promises of remediation thereafter occurred throughout the time period before the policy incepted on October 15, 2018. Moreover, a tolling agreement with Unit Owners was signed on November 8, 2018, shortly after inception of the Policy. Please provide us with copies of all communications between you and the Unit Owners or their representatives regarding the sound issues or any of the other

---

[1] "Damages" specifically does not include "taxes, fines or penalties, punitive or exemplary damages, the multiplied portion of multiplied awards, or other matters which may be deemed uninsurable under the law pursuant to which the policy shall be construed." (Section II.F.2., as set forth in End. 391-2012 08 16.)

[2] "Interrelated wrongful act" means all causally connected "wrongful acts". (Section II.F.3, as set forth in End. 391-2012 08 16.)

Jake Gantz
Nicholas Marietti
Robert Palley
December 18, 2019
Page 6

deficiencies identified in the amended complaint. In the meantime, Hanover reserves its rights with respect to any claims made against you prior to the policy period that arise out of the same wrongful act or interrelated wrongful acts as in the Lawsuit.

### D. Knowledge that a wrongful act had occurred prior to inception date.

As indicated above, there is coverage only if, prior to the inception date of the first Businessowners Condominium, Co-op, and Association Directors and Officers Liability endorsement issued and continuously renewed by Hanover, no insured listed under section C.1. (i.e., the Association) and no "employee" authorized by the Association to give or receive notice of a "wrongful act" or claim knew that a "wrongful act" had occurred in whole or in part. The inception date of the first such endorsement is October 15, 2017. As explained above, we understand complaints about the sound transference issues were first submitted in the summer of 2017. Therefore, Hanover reserves the right to disclaim coverage insofar as the Association or you knew prior to October 15, 2017 that a wrongful act had occurred in whole or in part.

### 6. <u>There is no coverage for Cross Insured Claims.</u>

The Policy excludes from coverage "'[d]amages' sustained by any insured that arise out of the activities of any other person or organization qualifying as an insured under this policy." (Section II.B.1.g. Cross Insured Claims, added by End. 391-2012 08 16.) As indicated above, an "insured" includes the plaintiff Association as well as its past and present directors and officers. (Section II.C.1. and 2., as amended by End. 391-2012 08 16.) In relevant part, an "insured" also includes:

> Each individual unit-holder … of the insured condominium, but only for liability arising out the ownership, maintenance or repair of that portion of the premises which is not owned solely by the unit-owner.

(Section II.C., as amended by End. 391-1966 08 16.)[3]

The plaintiff Association and the assignor Unit Owners are insureds under the Policy. Moreover, certain of the assignor Unit Owners are former or existing members of the Association's board of directors. As such, Hanover continues to reserve its rights to disclaim coverage on the basis that the litigation is an excluded Cross Insured Claim.

---

[3] Each Unit Owner is an insured person with respect to liability arising out of the Unit Owner's interest in the common elements or membership in the condominium association. (Section II.C., as amended by End. 391-1966 08 16.) The plaintiff Association is also an "insured" with respect to "'claims' for which [it] may be obligated to indemnify [its] past, present or future directors, officers, or trustees …." (Section II.C.4., as amended by End. 391-2012 08 16.)

Jake Gantz
Nicholas Marietti
Robert Palley
December 18, 2019
Page 7

**7.** <u>**There is no coverage for professional services.**</u>

The Policy does not cover "'damages' arising out of the rendering of or failure to render any professional service, advice or instruction:

    (1) By you; or
    (2) On your behalf; or
    (3) From whom any of you assumed liability by reason of a contract or agreement, regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

    This exclusion applies even if a claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "wrongful act" that caused the "damages" involved the rendering of or failure to render any professional service.

(Section II.B.1.j., as amended by End. 391-2012 08 16.)

Plaintiff alleges faulty construction, design and inspection. Hanover reserves the right to decline coverage on this basis.

**8.** <u>**Other insurance may apply.**</u>

Other insurance may apply to this matter, including but not limited to that afforded to you under policies issued to Ashland Harris and Vennpoint Real Estate (formerly Trilogy Investments, "Vennpoint"). The Policy provides that, "if other valid and collectible insurance is available to the insured for a loss covered under Section II-Liability, Hanover's obligations are limited as follows:

    a.  Primary Insurance

        This insurance is primary except when paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in paragraph c. below….

    b.  This insurance is excess over:
        (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:
            (a) That is Fire, Extended Coverage, Builders Risk, Installation Risk …;

        (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations … for which you have been added as an additional insured by attachment of an endorsement.

Jake Gantz
Nicholas Marietti
Robert Palley
December 18, 2019
Page 8

> When this insurance is excess, we will have no duty … to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

> c. When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
> (2) The total of all deductible and self-insured amounts under all that other insurance.

> d. We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Coverage.

(Section III.H.) We request copies of all other policies that may apply (including but not limited to those issued to Ashland Harris and Vennpoint), as well as coverage communications between you and the insurers that issued such other policies. If you have not yet put your other insurers on notice of the Lawsuit, Hanover again requests that you do so.

**9. <u>Coverage may be void if there was any fraud, concealment or mis-representation.</u>**

The Policy is void "in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

(Section III.C.) In the application for insurance, the question whether there had been prior losses in the past 3 years was answered "No". However, the sound transference issues and other deficiencies appear to have been known to an insured prior to the initial and/or replacement policies being issued (the initial application appears to have been submitted in or before January 2018). Also, the tolling agreement was signed by Ashland Harris on November 8, 2018, shortly after the current Policy went into effect.

*     *     *     *

Jake Gantz
Nicholas Marietti
Robert Palley
December 18, 2019
Page 9

The Policy requires the insureds to: "cooperate with [Hanover] in the investigation, or settlement of the claim or defense against the 'suit'; and "[a]ssist [Hanover] … in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may apply." (Sections II.E.2.c.(3)-(4).)  Without limitation, we request prompt advice of all significant developments as they occur, and copies of all significant communications, documents and court filings. Also, without limitation, if coverage may be implicated, Hanover must be consulted in connection with any settlement negotiations, and all settlement demands, offers or proposals made by the plaintiff or contemplated by the insured(s) must be promptly conveyed to Hanover before any action is taken.

Hanover's investigation and analysis of these matters are ongoing, and Hanover continues to fully reserve all rights, remedies and defenses, including but not limited to the right to amend the comments and reservations herein, to raise additional provisions of the Policy, to withdraw the defense and to recover amounts it has paid for your defense.  Hanover also reserves the right to pursue legal action for a determination of its coverage obligations under the Policy.  Nothing in this letter or any other communication, nor any action or inaction by or on behalf of Hanover, shall be construed as a waiver or limitation of such rights, remedies or defenses. If you have any questions or information you believe is relevant to the coverage analysis, please do not hesitate to contact us.

Very truly yours,

WALKER WILCOX MATOUSEK LLP

James J. Huberty

cc:     Tracie Coleman-Tucker, J.D.
        The Hanover Insurance Group

        Janice Reh
        Associated Agencies, Inc.
        jreh@associated.cc